# EXHIBIT A

## SETTLEMENT AND RELEASE AGREEMENT

**EFFECTIVE DATE:**   December 18, 2018

**RELEASOR:**   Simon J. Burchett, Inc., Simon Burchett and Channel Photography

**RELEASEE:**   A.P. Moller-Maersk A/S and all subsidiaries and affiliates.

**CLAIM:**   RELEASEE's alleged unauthorized publication of any and all of RELEASOR's copyrighted images of the Estelle Maersk existing on RELEASEE's Flickr page, and RELESEE's website, and its affiliated social media channels, as of the Effective Date (the "Images").

**SETTLEMENT PAYMENT:**   In consideration of RELEASOR's promise and covenant contained herein, RELEASEE agrees to pay Redacted

THIS SETTLEMENT AND RELEASE AGREEMENT (the "Agreement") is entered into by and between RELEASEE and RELEASOR (each, a "Party" and collectively, the "Parties") and is effective the date this Agreement has been fully executed by RELEASOR, and delivered by email to the RELEASEE along with an invoice and IRS Form W 9 (the "Effective Date").

The Parties agree as follows:

1.  The Parties to this Agreement acknowledge and agree that this Agreement relates only to the Claim as outlined above.

2.  Except for the agreements, obligations and covenants arising under this Agreement, RELEASOR and RELEASEE, release, remise and forever discharge each other from any and all claims, actions, suits, demands, agreements, and each of them, if more than one, liabilities, awards, judgments, and proceedings both at law and in equity that each Party has at any time hereafter may have or claim to have against anyone released by this paragraph, or by any reason of any matter, cause, or omission, occurring from the beginning of time to the Effective Date of this Agreement with respect to the Claim. RELEASOR covenants and warrants that RELEASOR is, at all times relevant to this Claim, the owner or authorized administrator of copyright rights in and to the Images, and that RELEASOR is authorized to enter into this Agreement and to grant the release described in this Agreement.

- 1 -



3.  RELEASEE represents that it will make its best effort to remove the Images from both its Flickr page and related Flickr Group pages.

4.  This Agreement contains the entire agreement of the Parties with respect to the Images and the Claim, and there are no other agreements, understandings, promises or representations concerning the Claim, the Images or this Agreement other than what is expressly stated in this Agreement.

5.  This Agreement, and all of its provisions, is binding on and benefits each Party's respective heirs, executors, administrators, successors in interest and assigns.

6.  This entire Agreement, including the validity of the release in Section 2 above, is conditioned on the following payment terms:

> RELEASEE shall pay RELEASOR the Settlement Amount is in full settlement and release of RELEASOR's Claim as set forth above, which is inclusive of all fees and costs associated with RELEASOR's Claim. The fully executed Agreement shall be received by RELEASOR's agent NO LATER THAN ten (10) days after the Effective Date.
>
> RELEASEE's payment in connection with this Claim constitutes its acknowledgment and acceptance of all of the terms of this Agreement, just as if RELEASEE had signed the Agreement's signature page and returned it to RELEASOR.
>
> The Settlement Amount must be paid in one lump-sum, in United States Dollars, and shall be made by check or wire transfer, as follows:

- To pay by check:  Garbarini FitzGerald P.C.
  250 Park Avenue, 7th Floor
  New York, NY 10177

- To pay by wire:

  | | |
  |---|---|
  | ABA Routing Number | 021000322 |
  | Account Number | 483068092062 (IOLA Account) |
  | SWIFT Code | BOFAUS3N should be used for incoming wires in U.S. dollars. Bank of America's |
  | SWIFT Code | BOFAUS6S should be used for incoming wires in non-U.S. currency |
  | Bank Name: | Bank of America |
  | Bank Address: | 1275 Lexington Ave, New York, NY 10028 |
  | Beneficiary/Account Name: | Garbarini Law Group P.C. i/c/o Simon J. Burchett, Inc. |




TIME IS OF THE ESSENCE OF THIS AGREEMENT AND THE PERFORMANCE OF THE PAYMENT OBLIGATION. RELEASEES'S PERFORMANCE OF THE PAYMENT OBLIGATION AS SET FORTH IN THIS AGREEMENT IS A MATERIAL INDUCEMENT TO RELEASORS'S DECISION TO ENTER INTO THIS AGREEMENT WITH RELEASEES.

7. The Parties hereto expressly acknowledge and agree that this Agreement has been entered into in good faith in order to resolve the Claim without an admission of wrongdoing on behalf of the RELEASEE. The Parties hereto expressly acknowledge that all terms of this Agreement are supported by good, valid and legally sufficient consideration so as to make this Agreement binding and valid.

8. Each of the Parties shall pay their own costs and expenses incurred in negotiation and preparation and execution of this Agreement.

9. This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same Agreement. Any of the Parties hereto may execute this Agreement by signing any such counterpart. An electronic signature or a handwritten signature transmitted via facsimile or via email shall be as effective as an original ink signature for the purpose of signing this Agreement.

10. Each Party represents and warrants that it entered into this Agreement in reliance solely upon its own independent investigation and analysis of the facts and circumstances, and that no representations, warranties or promises other than those set forth in this Agreement were made by either Party or any employee, agent or legal counsel of either Party to induce said Party to execute this Agreement.

11. Each Party represents and warrants that it has acted pursuant to the advice of legal counsel of its own choosing in connection with the negotiation, preparation and execution of this Agreement, or was advised by the other to obtain the advice of legal counsel and had ample opportunity to obtain the advice of legal counsel.

12. No Party, its heirs, successors, or assigns, nor any other person acting in concert with any of them, has assigned, transferred, or granted any claims, demands, or causes of action relating to the disputes that are settled and resolved by this Agreement, except to the extent expressly provided in this Agreement.

13. The provisions of this Agreement shall be liberally construed to effectuate the intended settlement. Section headings have been inserted for convenience only and shall not be given undue consideration in resolving questions of construction or interpretation. For purposes of determining the meaning of, or resolving any ambiguity with respect to, any word, phrase, term




or provision of this Agreement, each Party shall be deemed to have had equal bargaining strength in the negotiation of this Agreement and equal control over the preparation of this Agreement, such that neither the Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against either Party under any rule of construction.

14. Each of the Parties hereto agrees to promptly take whatever steps, and execute whatever documents, as may be commercially reasonably necessary to complete and consummate this Agreement and effectuate the terms hereunder.

15. Each party expressly acknowledges and agrees that each term of this Agreement shall be deemed material and shall be deemed to have been relied upon as of the Effective Date by the Parties when entering into this Agreement.

> (i) If a party files any claim, complaint, action, or proceeding alleging a breach of this Agreement, the prevailing party shall be entitled to recover its attorneys' fees and costs, in addition to any other relief to which the party may be entitled. To be clear, "prevailing" shall mean the party that prevailed in any Arbitration (as defined below) or before a federal or state court, if applicable, on substantially all of the party's claims.

16. The failure by any Party to enforce any term or provision of this Agreement shall not constitute a waiver of the right to enforce the same term or provision, or any other term or provision, thereafter. No waiver by any Party of any term or provision of this Agreement shall be deemed or shall constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

17. The terms and conditions of this Agreement are confidential between the parties and shall not be disclosed to anyone else, except as shall be necessary to effectuate its terms. Any disclosure in violation of this section shall be deemed a material breach of this Agreement.

18. In the event that any term or provision of this Agreement is held by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, then the remaining portions of this Agreement shall nonetheless remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious purpose and intent of the Parties.

19. Each Party shall bear all of its or his own costs and expenses incurred in the negotiation and documentation of this Agreement and in the performance of its or his obligations under this Agreement.



20. ALL CLAIMS ARISING OUT OF OR RELATING TO THIS SETTLEMENT AGREEMENT WILL BE GOVERNED BY NEW YORK LAW, WITHOUT REGARD TO OR APPLICATION OF NEW YORK'S CONFLICT OF LAWS RULES. The Parties agree that any dispute under, concerning or relating to the terms and/or enforcement of this Agreement shall be submitted for binding non-appealable arbitration in New York, New York before a single arbitrator affiliated with JAMS and pursuant to the JAMS Expedited Procedures (an "Arbitration"). An award rendered by the arbitrator may be entered in any court of competent jurisdiction.

21. This Agreement may be executed in any number of identical counterparts, each of which is an original, and all of which together constitute one and the same Agreement.

22. RELEASOR may not transfer its respective rights or obligations under this Agreement to any third party without the express written consent of the other Parties, such consent not to unreasonably be withheld.

23. This Agreement and all negotiations, statements and proceedings in connection herewith (i) shall not constitute or in any manner be or deemed to be evidence of any admission or concession of any liability, fault or wrongdoing, all of which are hereby expressly denied and disclaimed by the Parties, and (ii) shall not be offered or received into evidence in any action or proceeding in any court, arbitration or tribunal, or used in any way as an admission, concession or evidence of any liability, fault or wrongdoing of any nature on the part of any Party in any proceeding, except this Agreement may be offered in evidence in an action or proceeding where enforcement of this Agreement is sought.

24. Each of the Parties represents and warrants that it or he has all necessary power and authority and/or has taken all corporate action necessary to execute and deliver this Agreement, including the releases and covenants not to sue set forth herein, on behalf of each releasing and covenanting Party, to consummate the transactions contemplated hereby, and to perform its or his obligations hereunder. Each of the Parties represents and warrants that the execution, delivery and performance of this Agreement does not and will not: (i) violate or conflict with any provision of the articles of incorporation, bylaws, or similar governing documents of such Party; (ii) conflict with, violate, breach, or constitute a default of any contractual obligation, regulatory requirement, or court or administrative order by which such Party is bound; and (iii) violate any law, rule, or regulation.

INTENTIONALY LEFT BLANK

25. **THE UNDERSIGNED HAVE READ THIS AGREEMENT AND ACCEPT AND AGREE TO THE PROVISIONS IT CONTAINS, AND HEREBY EXECUTE IT VOLUNTARILY WITH FULL UNDERSTANDING OF ITS CONSEQUENCES AND TERMS.**

IN WITNESS WHEREOF, intending to be legally bound by this Agreement, each of the Parties has executed this Agreement on the date set forth adjacent each signature.

Dated: 21/12/18

By: *Simon Burchett*
Name: _____
On Behalf of Simon J. Burchett, Inc.,
Simon Burchett and Channel Photography

Dated: 21.12.2018

By: *[signature]*
Name: SVP & Gen Counsel Caroline Pontoppidan
On Behalf of A.P. Moller-Maersk A/S